## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

NON-PARTY SUBPOENA TO NATIONAL APARTMENT ASSOCIATION Issued by Middle District of Tennessee in *In Re: Realpage, Inc., Rental Software Antitrust* (MD-03071)

Case: 1:25-mc-00144
Assigned To : Ali, Amir H.
Assign. Date : 9/10/2025
Description: Civ. Misc. Case

## NATIONAL APARTMENT ASSOCIATION'S MOTION TO QUASH SUBPOENA

Comes now the National Apartment Association ("NAA") requesting relief under Fed. R. Civ. P.45(d)(1) to quash a subpoena served by plaintiffs in a lawsuit maintained in the Middle District of Tennessee, *In Re: RealPage Inc.* (MDL No. 3071).

## DESCRIPTION OF THE UNDERLYING LITIGATION

The parties have engaged in extensive discovery (a March 29, 2024 Joint Status Report indicated that over 7,000,000 documents had been produced in discovery), and a series of mediations. According to a recent filing, 33 defendants have settled with plaintiffs or have agreed to do so. The deadline for discovery was to occur at the end of August, 2025. Plaintiffs served NAA with its subpoena on August 7, 2025. The subpoena requires production on September 8, 2025, at Hausfeld LLC, 1200 17th Street, NW, Washington, DC 20036. ·

## PARTY DESCRIPTIONS

Plaintiffs are class representatives alleging damages offended due to violations of antitrust statutes.

Defendant RealPage Inc. is a computer software provider. Its market space are those companies that manage rental housing. The approximately 60 co-defendants are RealPage customers that use its software. Apart from normal bookkeeping processes, such as rent calculation and occupancy levels, the RealPage software also uses "rental management

**RECEIVED**

SEP 1 0 2025

Clerk, U.S. District & Bankruptcy
Courts for the District of Columbia

solutions." Plaintiffs allege that this feature allows the defendants to coordinate and agree upon rental housing, supply and prices.

Movant NAA is a trade association and not-for-profit corporation with its office located in Arlington, Virginia. It is not a party of the underlying litigation. NAA owns no real estate. It manages no rental housing. It is not a RealPage customer.[1]

As a trade association, NAA has members that own and manage rental properties. Those members pay dues for education, information, and advocacy services. Many of the defendants (but not all) are NAA members. RealPage is a "supplier member" of NAA. NAA is affiliated with a network of state and local apartment associations, each of which are separately incorporated and governed by their own respective boards of directors.

## POINTS AND AUTHORITIES

The Federal Rules of Civil Procedure allow for "broad access to relevant information at the discovery stage." *Jewish War Veterans of the U.S. of Am., Inc. v. Gates*, 506 F.Supp.2d 30, 41 (D.D.C. 2007). Relevance is "construed broadly to encompass any matter that bears on, or that reasonably could lead to other matter that could bear on any party's claim or defense." *United States ex rel. Shamesh v. CA, Inc.*, 314 F.R.D. 1, 8 (D.D.C. 2016) (*quoting Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351, 98 S.Ct. 2380, 57 L.Ed.2d 253 (1978)) (internal quotation marks omitted). However, the court must limit the extent of discovery that is, *inter alia*, unreasonably cumulative or duplicative, outside the permitted scope of Rule 26(b)(1), or obtainable from another source that is more convenient, less burdensome, or less expensive. *See* Fed. R. Civ. P. 26(b)(2)(C).

---

[1] RealPage is a member of NAA as are many of the defendants.

As a non-party, NAA is not subject to the same burden as parties to the case. *N. Carolina Right to Life, Inc. v. Leake*, 231 F.R.D. 49 (D.D.C. 2005), *Wyoming v. U.S. Dep't of Agric.*, 208 F.R.D. 449 (D.D.C. 2002). Since Plaintiffs already have the evidence they seek through this subpoena through the previous discovery process, and any related documents would apply to defendants who have already settled this case, despite placing this burden on NAA, there would be a slim chance of obtaining any additional useful information from this subpoena. *Diamond Servs. Mgmt. Co. v. Knobbe, Martens, Losen & Bear, LLP*, 339 F.R.D. 334 (D.D.C. 2021)

Rather than attempt to secure the "just, speedy and inexpensive determination for every action or proceeding" (Fed. R. Civ. P. 1), plaintiffs served an 11th-hour subpoena on a non-party seeking production of material already in their possession, with no relevance or materiality to the antitrust issue in the underlying litigation. Moreover, since half of the defendants have settled with plaintiffs, there is no case in controversy for these companies. Compliance with the subpoena is burdensome because it requires producing documents across every aspect of NAA's operations far exceeding the scope of normal discovery.

## I. PLAINTIFFS ALREADY POSSESS ALL DOCUMENTS RELEVANT TO THE UNDERLYING LITIGATION

The central issue presented in the MDL lawsuit is whether revenue management software or "Algorithmic Pricing" violates antitrust law. As a trade association, NAA is not involved in this issue. The defendant parties who are involved by virtue of using the RealPage software have been asked (and have produced) discovery relating to every conceivable communication about this topic. As described in reports to the Court in MDL 03071, over seven million documents were produced in response to Plaintiffs' discovery requests.

The demand that NAA produce additional material disregards the admonition that parties serving subpoenas "show a substantial need for testimony or materiality that cannot be otherwise met without undue hardship." Fed. R. Civ. P. 45(i).

The subpoena also requires NAA to produce documents related to all defendants knowing full well that many have settled or are about to settle and be dismissed from the underlying action. The inclusion of those companies in the subpoena is an also abuse of process.

## II. THE SUBPOENA REQUIRES PRODUCTION OF MATERIAL THAT IS COMPLETELY UNRELATED TO THE MDL CASE

**Request No. 3**: All Documents and Communications produced or received by You and Your members concerning donations made to government officials.

**RESPONSE**: Overly broad and unrelated to the lawsuit.

**Request No. 4**: Documents sufficient to show Your antitrust compliance policies.

**RESPONSE**: The requested documents are publicly available at FFC.gov. As a non-party to this action, this request is immaterial.

**Request No. 7**: Documents sufficient to identify Your Members and their corresponding membership levels (*i.e.*, Executive Committee, Board of Directors, or Advisory Committee), as well as the Membership and corresponding membership levels for each of Your state and local affiliates, such as (but not limited to) the Texas Apartment Association, on an annual basis for each year of the Relevant Time Period.

**RESPONSE**: Overly broad for both the ten-year time frame and the request for information from other independent parties.

**Request No. 8**: Documents or Communications sufficient to show all donations, contributions, or other forms of funds received by You from RealPage or any Defendant in the Action, including sponsor and exhibitor information for all meetings and events.

**RESPONSE**: Not related to the lawsuit.

**Request No. 9**: All Documents and Communications concerning standardized lease forms (including drafts concerning the adoption of class action waivers, jury trial waivers, and arbitration provisions), including:

(a) Documents and Communications between You and any Defendant (including RealPage);
(b) Documents and Communications between You and any Trade Association or Your affiliates;
(c) Documents and Communications created by You, circulated by You, or published by You or Your affiliates; and

4

(d) Documents and Communications concerning drafts, presentations, or periodicals that You produced to, or received from, any regulatory body, state or federal government agency, or any member of Congress (including their staff) and any related Communications, whether internal or external.

**RESPONSE:** Not related to the lawsuit.

**Request No. 10:** All Documents and Communications between You and any Defendant regarding Your Income & Expense Surveys (IES), including but not limited to all final IES Surveys and reports published during the Relevant Time Period, and any Defendant's submission of data for use in Your IES surveys, regardless of whether that Defendant's data was used in any draft or final survey.

**RESPONSE:** Not related to the lawsuit.

**Request No. 13:** Documents sufficient to identify any email lists or listservs that You operated during the Relevant Time Period that included Employees of one or more Defendant during the Relevant Time Period, and all Communications including such email lists or listservs discussing Revenue Management Solutions, Algorithmic Pricing, standardized lease forms or the submission of IES data or information.

**RESPONSE:** Not related to the lawsuit.

## III.   THE SUBPOENA IS OVERLY BROAD

As described above, the subpoena seeks to force NAA to read its 302-page amended complaint and undertake an audit to identify documents that might relate to persons an companies that are mentioned even in passing.

Tellingly, the subpoena did not exclude the 30 companies that have settled their claims. This is certainly a breach of the obligation to avoid undue burden and expense. The subpoena should be quashed.

## IV.   THE SUBPOENA IS OVERLY BROAD AND BURDENSOME

At the outset, we note that documents are requested over a ten-year period and directing that production occur on September 8, 2025, a mere 30 days after service. It also purports to direct NAA to produce documents not in its own possession through its facile definition of "You or Your" (Text of definition 3).

5

As explained earlier, NAA is affiliated in a network of independent trade associations and is not the custodian of records maintained by those organizations ("any other entities or individuals acting or purporting to act on their behalf or direction").

NAA staff has estimated that compliance with the subpoena would require thousands of hours to produce documents that plaintiffs already possess.

Fed. R. Civ. P. 45(d)(1) requires that a party or attorney issuing a subpoena must take reasonable steps to avoid imposing undue burden or expense on the person subject to the subpoena. The last-minute issuance of the subpoena to NAA reflects no such effort. It appears to be more of a casual, under-the-wire effort using pleading forms that already generated the millions of documents described in Ex. 2.

We respectfully request that the Court quash the subpoena for the reasons described above.

DATED:  September 8, 2025

/s/ John J. McDermott
John J McDermott (DC Bar No. 924803)
National Apartment Association]
4300 Wilson Boulevard, Suite 400
Arlington, VA 22203
Telephone: (703) 606-4460
Email: jmcdermott@naahq.org

6

## CERTIFICATION OF MEET AND CONFER REQUIREMENT

In accordance with U.S. District Court Rules D.C. LCvR 16.3, the attached letter was emailed to counsel for the plaintiff. No response was received, nor was there any response to the filed objections.

## CERTIFICATE OF SERVICE

I certify that on September 8, 2025, a copy of *National Apartment Association's Motion*

*To Quash Subpoena*, was served via email upon:

Fatima Brizuela, Esq.
fbrizuela@scott-scott.com
Scott+Scott
600 W. Broadway, Suite 3300
San Diego, CA 92101

/s/ John J. McDermott
John J McDermott